Dozier V. HAZIEL, Appellant,

v.

UNITED STATES of America, Appellee.

No. 20982.

United States Court of Appeals District of Columbia Circuit.

Argued June 25, 1968.

Decided Sept. 27, 1968.

Wilbur K. Miller, Senior Circuit Judge, dissented.

Mr. Harold H. Bacon, Washington, D. C. (appointed by this court), for appellant.

Mr. William G. Reynolds, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Miss Carol Garfiel, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and WRIGHT, Circuit Judge.

BAZELON, Chief Judge.

Dozier Haziel was 16 years old when he was arrested for armed robbery and assault with a dangerous weapon in September 1965. The Juvenile Court waived jurisdiction to the District Court, where he was ultimately tried as an adult and convicted. Today he is 19 years old. He advances two contentions in this appeal: first, that his waiver by the Juvenile Court was improper; and, second, that even if the waiver was proper, he was denied his constitutional right to a speedy trial in the District Court.

Since the jurisdiction of the District Court to try the appellant depended on a valid waiver, we consider the waiver problem before examining the alleged constitutional defect in his trial. Because the record is inadequate to permit resolution of the waiver issue, further proceedings in the Juvenile Court will be required. To minimize further delay in the final disposition of this already prolonged case, we order the Juvenile Court to complete the further proceedings required within 30 days.

Three youths robbed a grocery store on September 2, 1965. The proprietor was shot and wounded. The police arrested Haziel and Larry J. Wilkerson minutes later several blocks away. On September 21, 1965, the Juvenile Court waived jurisdiction to the District Court. After indictment and arraignment in early October, trial was set for November 30, 1965. The crowded docket required a continuance that day. On January 20, 1966, following this Court's decision in Black v. United States, 122 U.S.App.D.C. 393, 355 F.2d 104 (1965), the Government moved to remand the case to the Juvenile Court for new waiver proceedings in which Haziel would be assisted by counsel. Two and a half weeks later, the case was remanded. Almost seven weeks later, on March 15, 1966, the Juvenile Court appointed counsel to represent Haziel. Just three days later, with a promptness theretofore lacking in the leisurely proceedings, the lawyer sent a five-line letter to the Juvenile Court:

> Pursuant to your letter appointing me to represent on Dozier Haziel in your Court, I have reviewed the files of your Court and find no basis for requesting a hearing or further consideration relative to a waiver to the United States District Court for the District of Columbia.

On April 6, 1966, the court sent a second letter to the appointed counsel advising him of the adoption of a new Juvenile Court Rule 23 under which he could request a waiver hearing for his client despite his earlier decision. The lawyer telephoned the court to state that he "was standing by his position" and would not request a hearing.

Finally, on May 10, 1966, exactly four months after the Government's motion to remand, the Juvenile Court waived Haziel once again to the District Court without a hearing. This occurred seven weeks after the Supreme Court held in Kent v. United States, 383 U.S. 541, 557, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), that the statute governing such waivers, 11 D.C.Code § 914 (1961), now 11 D.C.Code § 1553 (1967), "read in the context of constitutional principles" entitles a juvenile to a hearing before waiver. Specifically, the Supreme Court concluded in Kent,

> The statute does not permit the Juvenile Court to determine in isolation and without the participation or

any representation of the child the "critically important" question whether a child will be deprived of the special protections and provisions of the Juvenile Court Act.

*Id.* at 553, 86 S.Ct. at 1053.

Whatever one might think of the quality of representation in these waiver proceedings, there is no evidence whatsoever in the record of the slightest participation by the child. The curt letter of the appointed counsel does not suggest that he had even spoken with his client. Haziel sent a handwritten letter to the Juvenile Court judge on March 8, 1966, complaining of conditions in the District of Columbia Jail, where he had been incarcerated since September, and asking "that you take my letter into consideration in disposing of my case." This letter, unanswered by the court, does not suggest that Haziel was aware of any right to a hearing. Nor is there any suggestion in the record that Haziel was after the decision in *Kent* informed of this right. Nor is there any basis to speculate that his mother, with whom he lived before his arrest, was told that her son was entitled to a hearing.

Rule 23 of the Juvenile Court, adopted on March 30, 1966, following the decision in *Kent,* provides that "the juvenile and his parents, guardian or custodian shall be present" at the waiver hearing, but places the onus upon counsel to file a "request for hearing * * * within five days of the notice to counsel that the Court is considering waiver." Although the Juvenile Court in this case took pains to advise counsel of his client's right to a hearing, it sought no assurance that counsel in turn advised his client of this right.

▮ The law allows counsel to speak for his client on many occasions. In an adversarial criminal proceeding, the client may be bound by his counsel's calculated decision when trial tactics are involved. *See* Henry v. State of Mississippi, 379 U.S. 443, 450–453, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). Such circumstances arise for the most part when the assertion of a claimed right may backfire if incorrect. Since these decisions must often be made in the heat of trial, and frequently involve nice calculations of procedural complexities and jurors' likely reactions, the attorney must sometimes make the choice without consulting his client. In other circumstances we rely upon counsel to speak for his client not because we believe the attorney must make the decision, but because we assume the attorney has consulted with his client, advised him of what is at stake, and helped him toward a wise decision.

▮ At certain critical junctures, however, the law takes particular pains to insure that the decision is that of the defendant. Thus, Rule 11 of the Rules of Criminal Procedure as amended in 1966 provides explicitly,

> The Court * * * shall not accept [a plea of guilty] * * * without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea.

The juvenile's right to a waiver hearing is, like the right to a trial on a plea of not guilty in the adult court, "critically important." *See Kent,* 383 U.S. at 553, 86 S.Ct. 1045; *Black,* 122 U.S.App.D.C. at 394, 355 F.2d at 105. "The essential scheme of the Juvenile Court Act is * * * that non-criminal treatment is to be the rule—and the adult criminal treatment, the exception which must be governed by the particular factors of individual cases. Harling v. United States, 111 U.S.App.D.C. 174, 177–178, 295 F.2d 161, 164–165 (1961). The divide between the Juvenile Court with its promise of non-punitive rehabilitation and the harsher world of the District Court is one not lightly to be crossed. As the statute provides, and as this Court has time and again emphasized, treatment as a juvenile can be withdrawn only after "full investigation." 11 D.C.Code § 1553 (1967); *see, e. g.,* Black v. United States, 122 U.S.App.D.C. 393, 355 F.2d 104 (1965); Watkins v. United States, 119 U.S.App.D.C. 409, 343 F.2d 278 (1964); Green v. United

States, 113 U.S.App.D.C. 348, 308 F.2d 303 (1962); Pee v. United States, 107 U.S.App.D.C. 47, 274 F.2d 556 (1959).

Since the presumption of the statutory framework is that juveniles are to be treated as juveniles, the "full investigation" required before waiver to the adult court must explore all the possible dispositions short of waiver by which the "welfare [of the child] and the best interests of the District," 16 D.C. Code § 2316(1) (1967), may be secured. Both counsel and the court have a vital role to play in this exploration. The child's advocate should search for a plan, or perhaps a range of plans, which may persuade the court that the welfare of the child and the safety of the community can be served without waiver. And the court itself cannot remain inert. It also has a duty to utilize its "facilities, personnel and expertise for a proper determination of the waiver issue." *Black*, 122 U.S.App.D.C. at 396, 355 F.2d at 107. The trial judge in even an adversary criminal trial has a responsibility to protect the administration of justice. *See*, Evans v. United States, 130 U.S. App.D.C. 114, 119, 397 F.2d 675, 680 (1968) (dissenting opinion). Far more is this true under the Juvenile Court Act, where the parens patriae principle which justifies some tempering of the adversarial nature of the process reinforces the duty of the judge to insure that the child receives the full benefits promised by the statutory scheme.

A "full investigation" of the alternatives to waiver may well be a frustrating task. It is all too often clear what the juveniles considered for waiver need, and even clearer that the Juvenile Court cannot provide it. Many of these children need, above all, a stable home such as they have never enjoyed. They need parents, or, what may be more heartbreaking, they need better parents. This the court can never hope to provide. Less pardonably, it too often cannot even provide a surrogate that offers some hope to reclaim the youth. Many of these juveniles have grown to an embittered adolescence amidst the frustration of the ghetto.[1]

---

1. The appellant presents a model example of the sort of troubled past that brings a boy before the Juvenile Court as a candidate for waiver to the District Court. We have inspected the social records of the Juvenile Court under the authority granted by 11 D.C.Code § 1586 (b) (1967); see Creek v. Stone, 126 U.S.App.D.C. 329, 331 n. 1, 379 F.2d 106, 108 n. 1 (1967). Haziel's father deserted the family when he was two years old. His mother remarried, and had two more children before her second husband disappeared after serving a felony term. The appellant's first clash with the law came at age 12, when he struck a teacher in June 1961. At that time a probation officer for the Juvenile Court, after interviewing the boy and his mother, concluded, "All in all, it appears that Dozier is a youngster who is able to take a hold of some reflected thinking about his problems in school as well as in his relation with others." No action was taken by the court. The optimism of the probation officer proved unwarranted.

In the fall of 1961 Haziel entered a new school. Although his tested I.Q. ranged between 103 and 112, he was placed in a "slow moving" seventh grade class. Over the next year he transferred to new schools three times because of difficulties in adjusting. In December 1962 the Department of School Attendance filed a truancy complaint against Haziel. The court probation officer reported, "Dozier admits truancy and expresses a serious discontent with home and expresses a desire to the Children's Center, feeling it is the only place he will learn to behave."

Accordingly, Haziel was committed to the Department of Public Welfare for two years and spent one year at Cedar Knoll. Two months after his release he was returned to Cedar Knoll after admitting to a car theft in Prince George's County. His adjustment there was poor. He absconded twice, in June 1964 and again in October. When the expiration of his two-year commitment to the Department of Public Welfare approached in March 1965, his caseworker reported, "it [is] the general feeling that Dozier is so hostile that he will soon be in trouble again, if he is released at this time." The Juvenile Court continued his commitment for one additional year. The Department then released him from Cedar Knoll, although he remained within the care of the agency. Three months later the Department requested the

They need, desperately, some reason to hope they are not the losers that society has labelled them. This also the Juvenile Court too often may not be able to provide.

■ The job of saving the boy who has compiled a long juvenile record and then committed a serious offense after his sixteenth birthday may be so costly, or so difficult even if no cost were spared, that the "full investigation" required by statute cannot but be a pious charade in many cases. But the statute commands such an examination of alternatives. Perhaps it is only by searching for what we need but do not have that future improvements in knowledge and resources can be hoped for. Whether such hope is justified or not, a "full investigation" is commanded, and it cannot be mere ritual. To insure that it is not, the Supreme Court has held that

> it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor * * * sufficient to demonstrate that the statutory requirement of "full investigation" has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review.

*Kent*, 383 U.S. at 561, 86 S.Ct. at 1057.

■ The Juvenile Court here, surveying the appellant's record, concluded,

> Respondent has had a full exposure to the institutional facilities of the Department of Public Welfare and also to the community casework services provided by the Department. If Respondent did commit the acts [charged] * * *, it is apparent that his prior exposure to facilities available to the Court has had no significant rehabilitative impact on him. On the basis of all the information brought before the

Court, the Court is of the opinion that there are no reasonable prospects for rehabilitating the juvenile by the use of facilities currently available to the Juvenile Court.

The Juvenile Court did not indicate what strategy might offer hope to rehabilitate the appellant, nor what facilities would be necessary to pursue such a strategy nor what efforts had been made to explore the availability of such facilities. The unelaborated conclusion that "facilities currently available to the Juvenile Court" offered no promise of rehabilitation thus telescoped together the several distinct stages of this critical inquiry. And indeed the court's reliance on "currently available facilities" as determinative may have been misplaced. This Court has noted on other occasions that

> the purpose stated in 16 D.C.Code § 2316(3)—to give the juvenile the care "as nearly as possible" equivalent to that which should have been by his parents—establishes not only an important policy objective, but, in an appropriate case, a legal right to a custody that is not inconsistent with the parens patriae premise of the law.

Creek v. Stone, 126 U.S.App.D.C. 329, 379 F.2d 106, 111 (1967); *see also* In re Elmore, 127 U.S.App.D.C. 176, 382 F.2d 125 (1967). We do not find it necessary to determine the difficult question whether the statutory promise of non-criminal treatment in all but exceptional circumstances may be denied the juvenile because of the lack of adequate facilities. We well recognize the undeniable limitations upon the resources available to the Juvenile Court. On the other hand, we also cannot ignore the mockery of a benevolent statute unbacked by adequate facilities. And to the extent that a juvenile with more affluent parents might avoid waiver because of the availability of privately-financed treatment and rehabilitation, constitutional issues may lurk in the problem.

court to set aside his commitment entirely, reporting that he had adjusted to release well, had found a job, and was

getting along well at home. Two months later Haziel took part in the robbery.

Our doubts concerning the substantive standards applied by the Juvenile Court compel a close scrutiny of the procedures by which the decision to waive was reached. Because the "revision of that trained judgment in a particular case by a non-specialist tribunal is a venture not to be undertaken lightly * * *," Kent v. United States, 119 U.S. App.D.C. 378, 384, 343 F.2d 247, 253 (1965), rev'd 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), we must have the fullest confidence in the process by which that judgment is exercised. This confidence requires assurance that all of the factors we have described as relevant in a waiver hearing have been explored by counsel or someone properly acting in behalf of the juvenile and presented to the court.[2]

The process in this case provided no visible role for the appellant. If Haziel in fact played no part in the waiver proceedings, such as they were, the decision to waive, whatever the reasons announced by the Juvenile Court, is hardly one in which we can have confidence. It would invert justice to allow the importance of the roles entrusted to court and counsel to justify a complete denial of participation to the juvenile. In reality the appellant here might not have been able to make a large substantive contribution to the waiver decision. It is an open question whether his mother's participation might have been more valuable. But both were entitled to insist at least that a hearing be held, and thereby perhaps to spur the other participants in the process on to a fuller performance of their duties. In a case that seems appropriate for waiver, considerations of time and effort may make a hearing unattractive for both unpaid counsel and the court. Indeed, the possibility that officials in the system will persuade the juvenile to unwisely abandon his rights has led at least one commentator to suggest that no waiver of such rights by the juvenile should be permitted. *See* Handler, The Juvenile Court and the Adversary System: Problems of Function and Form, 1965 WISC.L.REV. 7, 32–34.

We do not go so far. And while it would be preferable practice for the court to address the juvenile personally to insure that his decision to refuse a waiver hearing is made knowingly, we do not determine whether the reliance Rule 23 places upon counsel is in all cases improper. We reserve decision as to whether a different record might permit the conclusion that the juvenile was consulted and his wishes reflected in the decision to waive his right to a waiver hearing. We hold only that the record in this case does not permit us to conclude that the waiver without a hearing was proper in this case.

The promptness with which counsel acted, the words with which he acted, and the otherwise barren state of the record raise a serious question whether Haziel did in fact participate in the decision. If he did not, difficult problems are posed for this Court in fashioning a remedy. A reexamination at this late date of whether waiver was appropriate more than two years ago is depressingly artificial. The appellant is not significantly older. What was then done cannot be undone. To decide, therefore, whether it should be undone is an unappealing task.

The difficulty of fashioning an effective remedy if the 1966 waiver was indeed improper, and the possible Sixth Amendment issues that might arise from the denial of a waiver hearing to a juvenile at the only time when one could be meaningful, persuade us that the wiser course is to remand this case to the Juvenile Court for a factual hearing to determine the actual quality of the appellant's participation in the decision to refuse a waiver hearing.

In conducting such a hearing, the testimony of the appellant, his mother, and

2. In the future, any counsel wishing not to demand a waiver hearing, after consultation with his client, would be well advised to indicate this exploration by letter to the court.

his original trial counsel will all be relevant. Moreover, in addition the hearing should inquire into the participation if any of his mother in the decision not to demand a hearing. We do not decide at this time whether a parent could in these circumstances waive a right belonging to the juvenile. *Cf.* In re Gault, 387 U.S. 1, 34 n. 54, 41–42, 87 S.Ct. 1428, 18 L.Ed. 2d 527 (1967); McBride v. Jacobs, 101 U.S.App.D.C. 189, 190, 247 F.2d 595, 596 (1957).

■ If the Juvenile Court finds that Haziel and his mother did not participate fully and intelligently in the decision not to demand a waiver hearing, it should fashion a remedy in accordance with the principles announced in this opinion. The court may, if it believes that course feasible, hold a further hearing to determine whether the original decision to waive jurisdiction to the adult court was appropriate. Any such hearing must, however, make a thorough examination of the juvenile's possible future as well as his distressing past. The previous history of the youth is relevant. But its relevance lies not in the justification it may provide for the Juvenile Court to abandon its statutory duty to help the young offender, but in the insight the past may contribute to the best strategy for rehabilitation. For it is only after all rehabilitative possibilities have been canvassed that a decision to waive jurisdiction to the District Court is ever proper.

■ The Juvenile Court may well decide that a hearing at this late date to determine whether, applying the standards we have set forth, waiver would have been proper more than two years ago is so artificial as to be meaningless. Certainly we cannot gainsay the difficulty of determining what rehabilitative strategy might then have worked, and whether resources were then available to implement any such strategy. If the Juvenile Court so concludes, the indictment must be dismissed.

We realize the knottiness of the problem we thus entrust to the Juvenile Court if the 1966 waiver proves to have been defective because of the appellant's lack of participation. But the difficulty of the task calls for the expertise of that specialized tribunal; the initial effort to forge a remedy is not for this appellate court.

■ It is all too often true that appellate opinions must reflect the realization that little can be done to salvage the past. But if yesterday has forever fled, the future can and must still be cared for. The standards set forth in this decision may well do more to improve future waiver proceedings than to correct the past. Because we so well recognize the difficulty of post hoc re-evaluations of waiver proceedings, we make the requirement for a fully articulated examination of rehabilitative possibilities prospective in the sense that a new waiver proceeding will be required only if the juvenile's participation in the original proceeding proves defective. If the Juvenile Court concludes that his participation was meaningful and intelligent, and we can concur in that judgment, we conclude that the original waiver order should be considered valid. At that hypothetical juncture it will, of course, be necessary for this Court to weigh the appellant's constitutional claim of a denial of his right to a speedy trial in the District Court.

To minimize further delay in this already prolonged case, we direct the Juvenile Court to complete the further proceedings ordered within a maximum of 30 days after Dozier v. Haziel is apprehended and returned to custody.

Remanded for further proceedings.

WILBUR K. MILLER, Senior Circuit Judge, dissents.