**Willie STRICKLAND, Jr., Appellant,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**No. 22224.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 6, 1970.

Decided Oct. 6, 1971.

Mr. Lawrence L. Schwartz, Washington, D. C. (appointed by this Court), for appellant.

Mr. Warren L. Miller, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, and McGOWAN and TAMM, Circuit Judges.

## I.

TAMM, Circuit Judge:

In this case we are asked, more than four years after the Juvenile Court proceedings, to remand the proceedings to the United States District Court for a redetermination of the validity of the Juvenile Court's waiver of jurisdiction. Since the basic proceedings against appellant were initiated he has reached his majority and the Chief Judge of the Juvenile Court, before whom the original hearings were held, has died.

Willie Strickland, Jr., our appellant herein, was seventeen years of age when he was charged with assault with a deadly weapon in a complaint filed in November 1966. The Juvenile Court by an order entered in January 1967 waived its jurisdiction, and soon thereafter appellant was indicted in the United States District Court. The indictment charged Strickland, in multiple counts, with assault with a dangerous weapon, D.C. Code § 22–502 (1967) and mayhem, id. § 506. The jury found appellant guilty on all counts of the indictment and he was sentenced to a term not to exceed 8 years under the provisions of the Youth Corrections Act, 18 U.S.C. § 5010(c) (1964).

## II.

Early in the District Court's trial of the offenses charged, defense counsel sought by motion to have the indictment dismissed on the ground that the Juvenile Court's waiver was invalid. In substance the motion was predicated upon the inability of anyone to locate the original Juvenile Court file at that time with the result that the only document establishing the Juvenile Court action was its waiver order. It was argued to the District Court that since the waiver order merely recited that the waiver hearing had been held, it was, in the absence of supporting records, insufficient to establish the validity of the waiver. The District Court denied the motion to dismiss basically on the ground that defense counsel had failed to establish in any way that appellant had been prejudiced by the loss of the Juvenile Court file. The learned District Court judge, however, ordered that the records of the Juvenile Court be brought before him so that he could determine if, in fact, a formal waiver hearing was held, and if so,

whether appellant was at that time represented by counsel.

An examination of the Juvenile Court's records by Judge Gasch revealed an Order by Judge Miller of the Juvenile Court (Appendix I) which expressly stated that a full investigation was held and that the jurisdiction of the Juvenile Court was being waived over our appellant by virtue of the authority vested in the Chief Judge by D.C.Code § 11–1553 (Supp. V, 1966). The order indicated that the appellant was represented by counsel at both the investigation and the waiver proceeding. The order recited that "[a]ll Court legal and social records on Respondent [our appellant] have been made available to [his] counsel. *Respondent and his counsel have been afforded a hearing.*" (Emphasis added.) In conjunction with his order the Chief Judge issued a Statement in Support of Waiver Order (annexed hereto as Appendix II) in which he pointed out that according to the social worker's report to the Court, in which waiver was recommended, " * * * the Respondent has conducted himself as an adult since March 1966. * * * " Both the order and statement in support thereof were handed down on January 17, 1967, and are over Chief Judge Miller's signature.

On December 2, 1966, the procedure for waiver was initiated. This was followed, on December 19 of that year, by a recommendation of waiver by the chief psychiatrist of Legal Psychiatric Services.

He reported that Respondent 'does not seem to appreciate the seriousness of the current offenses and tends to make light of the whole thing.' The psychiatrist reported that tests on Respondent 'point up his tendency toward omnipotent, autistic thinking, and his paranoid attitudes.' He concluded that the Respondent 'is a very dangerous, impulsive, hostile young man, who sees himself as sort of indestructible superman, and is not psychotic.

Statement in Support of Waiver Order, Appendix II.

There has been no shadow of doubt cast on the authenticity of either the Waiver Order or the Statement in Support of the Order. Nor has there been any question concerning their regularity.

### III.

At this point it would seem that a presumption of regularity would arise as a matter of law, and that this presumption would apply, in the absence of substantial showing to the contrary, to the actions of both the Juvenile and District Courts. "All possible presumptions are indulged to sustain the action of the trial court." T.V.T. Corporation v. Basiliko, 103 U.S.App.D.C. 181, 183, 257 F.2d 185, 187 (1958), citing In re Chapman Coal Co., 196 F.2d 779 (7th Cir. 1952). *See also,* Mercantile Trust Co. v. Hensey, 205 U.S. 298, 306, 27 S.Ct. 535, 51 L.Ed. 811 (1907), Berenter v. Staggers, 124 U.S. App.D.C. 141, 142 n.2, 362 F.2d 971, 972 n.2 (1966), In re Ripp, 242 F.2d 849, 851 (7th Cir. 1957), Miller v. Delaware, Lackawanna and Western Railroad Co., 241 F.2d 116, 118 (2d Cir.), cert. denied, 354 U.S. 923, 77 S.Ct. 1384, 1 L.Ed.2d 1438 (1957). Despite the absence of any showing of error, or of prejudice, the dissent, with more courage than justification, is overwhelmed by the apparently hypnotic claim that the waiver proceedings were invalid, and concludes somehow that this mere allegation opens indefensible breaches in the procedural aspects of the case. This simply is not the case and the result is a legal maltrition in which a naked allegation functions as a substitute for proof. A remand to consider whether the waiver was valid is, in our opinion, a meaningless pantomime carried on for the sake of tradition despite what is a completely adequate and finalizing record. "The absence of a completely accurate transcript does not, without more, invalidate a conviction." United States v. DiCanio, 245 F.2d 713, 715 (2nd Cir.), cert. denied, 355 U.S. 874, 78 S.Ct. 126, 2 L.Ed.2d 79 (1957). There is far less reason then to invalidate a "waiver proceeding" and thus the conviction, where, on the basis of the ample

record before us, we can only conclude that our appellant would derive absolutely no benefit from the rehabilitative values of Juvenile Court jurisdiction.

### IV.

The appellant has placed a great deal of stress on the decision of the Supreme Court in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). We have carefully examined that decision and given extensive consideration to the words of the Court therein. Following this examination we are convinced that reliance on *Kent* by our appellant can be nothing more than an act of sophistry.

In *Kent* the Supreme Court stated, *inter alia*:

It [the District Court] must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts. It may not "assume" that there are adequate reasons, nor may it merely assume that "full investigation" has been made. Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor. * * * [T]he statement should be sufficient to demonstrate that the statutory requirement of "full investigation" has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review.

Kent v. United States, *supra*, 383 U.S. at 561, 86 S.Ct. at 1057.

In the instant case each and every one of the requirements enumerated in Mr. Justice Fortas' opinion is complied with in both the letter and the spirit of the law. The trial judge denied appellant's motion to dismiss relying upon Judge

Miller's order with its accompanying statement as required under the teachings of *Kent*. We can reasonably assume that the trial judge had both of these documents in his possession, although admittedly the record is not entirely clear on this point. It is a safe assumption that both the waiver order and statement in support thereof were transmitted together, and it must be noted that the statements of the trial judge contained in the record are devoid of *any* suggestion which would positively negate the availability of these two documents to him. The logic of this argument is enhanced by the language of the Court in *Kent*. "[I]t is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor." United States v. Kent, *supra*, 383 U.S. at 561, 86 S.Ct. at 1057 (emphasis added). The language of Judge Miller's waiver order strongly indicates that it was drafted in light of the guidelines promulgated by the Supreme Court. This, coupled with the fact that both order and statement were issued on the self-same day, leads this Court to believe that both documents were sent to the District Court and were in the trial judge's possession.[1]

### V.

If the recitals in the waiver order itself are to be considered inadequate on their own merit for the purpose of certifying that the basic procedural standards had been met, such a consideration would have to be negated by the dictates of pure logic and common sense by considering the content of the "Statement in Support of Waiver", at page three thereof which is a certification of a "Summary of Court Records * * * Relevant to Waiver" and clearly expresses Judge Miller's consideration of the prior juvenile record amassed by appellant, which includes a 1960 robbery

---

1. There is a clear indication that Judge Gasch had a copy of the Waiver Order by the language of the transcript (Tr. 5–10), and while there is no mention of the Statement in Support of Waiver at that point in the proceedings there is a

specific mention at Tr. 125, wherein we find the following statement:

THE COURT: All we have is a copy of Chief Judge Miller's statement, which you have seen—

charge, his subsequent commitment to the custody of the Department of Public Welfare, his charge of extorting money from school children in 1963, a robbery charge in 1962, a 1963 charge for destroying movable property, followed by yet another commitment to the custody of the Department of Welfare. The record facing this Court creates a strong and, we believe, justifiable doubt as to the ability and sufficiency of the Juvenile Court to deal with our appellant's repeated transgressions of community laws and his continued attitude of utter and flagrant disregard for those laws designed to make the community a safer and better place to live.

To our dismay, the record of appellant's transgressions goes even further. Judge Miller continued his evaluation by detailing charges against appellant on March 16, 1966, at which time he was charged with housebreaking, and his absconding from Number 2 Precinct during questioning about the charge while an "attachment" was outstanding for this offense; and on November 9, 1966, Judge Miller records, appellant was charged with "assault with a deadly weapon" (a bottle), with "assault with intent to kill, robbery, by force and violence (with another, stealing arresting officer's gun at point of a shotgun)," and finally, with "assault with a deadly weapon (six counts, when he fired a shotgun at six complainants, wounding three)."

Judge Miller also recorded social workers' reports that appellant was not attending school; his parents had little control over him; he had a few odd jobs "while on his own;" he has fathered a baby girl. The record, meticulously recorded by Judge Miller, speaks of appellant's tubercular affliction and his treatment and cure therefrom. Judge Miller recorded: "The social worker thought the respondent to be beyond juvenile rehabilitative facilities. The Director of Social Work concurred in this recommendation."

The conclusions enumerated by Judge Miller point out that appellant's "full exposure" to institutional and noninstitutional facilities of the Juvenile Court have not had any significant rehabilitative impact on him, and that his alleged conduct "reflects the highest degree of danger to the public." The dissent, however, concludes that this lengthy recital does not apparently justify Judge Miller's written conclusions that

by the use of facilities currently available to the Juvenile Court: 1) there are not reasonable prospects for rehabilitation of the Respondent; 2) and that the public safety can not be adequately protected.

## VI.

We have gone to great lengths in setting out our appellant's record simply because it is impossible to accept or justify the position urged upon us by his counsel, or by the dissent herein, which would lead to the untenable conclusion that the loss or mislocation of records resulted in some meritorious shortcoming in the procedural requirement attendant upon the waiver proceedings. Although there is some chronological confusion as to precisely when and where certain records were or were not available, it is clear on the record presented to the Court, that the waiver was valid, complete, adequate, proper and timely.

This Court is quick to note that the difficulties surrounding this case could have been avoided had the transcript of the waiver hearing been available at all times. In a court system as vast as ours, it is inevitable that from time to time a file may either be lost or temporarily mislaid. We do, however, admonish those with the responsibility of caring for these records to exercise an even greater degree of diligence in a job which is generally well done. However, even without the transcript of the waiver hearing the Court is most hesitant to go behind the affirmative recitals found in the Chief Judge's order; nor are we willing to overturn the District Court's decision based upon some hypothetical irregularity in the Juvenile Court's proceedings. *See* T.V.T. Corporation v.

Basiliko, 103 U.S.App.D.C. 181, 183, 257 F.2d 185, 187 (1958), citing In re Chapman Coal Co., 196 F.2d 779 (7th Cir. 1952). As this Court stated in Creek v. Stone, 126 U.S.App.D.C. 329, 334, 379 F.2d 106, 111 (1967): "[The Juvenile Court is rightly vested with a broad range of discretion in light of its professional expertise. * * * When the expert discretion of the Juvenile Court is exercised with knowledge of the salient facts, its exercise of discretion will not be disturbed absent clear abuse." In another case in point this court stated that waiver of jurisdiction by the Juvenile Court would lead to a presumption of regularity with regard to those proceedings which enable the court to reach its decision. Green v. United States, 113 U.S. App.D.C. 348, 351, 308 F.2d 303, 306 (1962) (Burger, J., concurring).

Of more significant import is the recital in the District Court stating the availability of the Juvenile Court record prior to the closing of the proceedings before that Court and stating that the record was expressly made subject to examination by defense counsel who failed originally to raise the objection here in issue. The failure of the appellant's counsel to take any further action incontrovertibly indicates his satisfaction with the record before him. The issue, however, is now raised by counsel newly retained; loss of the Juvenile Court file in the interim does not in the opinion of this Court warrant reversal.

To remand this case at this late date to the District Court for a determination and evaluation is an injudicious waste of time. That the aim of the dissent is high and praiseworthy is completely irrelevant; Appellate Court rulings must be judged by their soundness; not by their motivation. Against this specific record the Court would be moving beyond the area of protecting juvenile proceedings and reducing itself to an adoption of a punitive, accuser policy toward the trial courts. While the most hardened mind and most calloused heart can be stirred to righteous indignation by any flagrant disregard of the constitutional rights of even the most obviously guilty defendants, especially juveniles, this court cannot conclude that on this record there is a scintilla of justification for remand.

Affirmed.

## APPENDIX I

### IN THE JUVENILE COURT
### FOR THE DISTRICT OF COLUMBIA
Docket No. 66–4041–J

In the Matter of

WILLIE STRICKLAND, JR.

### ORDER WAIVING JURISDICTION
### OVER WILLIE STRICKLAND, JR.
### AS TO CERTAIN OFFENSES

After full investigation and pursuant to the authority vested in me by the District of Columbia Code, Sec. 11–1553 (Supp V, 1966), I do hereby order that the jurisdiction of the Juvenile Court of the District of Columbia over the Respondent Willie Strickland, Jr. be waived; and I do hereby order the Respondent held for trial under the regular procedure of the United States District Court for the District of Columbia for the following alleged offenses which would amount to felonies in the case of an adult:

(a) Assault with a Dangerous Weapon (bottle)
Date: On or about November 9, 1966
Place: In the vicinity of 1400 Fairmont St. N.W.
Complainant: Clarence J. Blackwell

(b) Robbery by Force and Violence
Date: On or about November 9, 1966
Place: In the vicinity of 1400 Fairmont St. N.W.
Complainant: Detective Sebron Isom

(c) Assault with Intent to Kill
Date: On or about November 9, 1966
Place: In the vicinity of 1400 Fairmont St. N.W.
Complainant: Detective Clarence Steve

(d) Assault with a Dangerous Weapon (shotgun) six cases

Date: On or about November 9, 1966

Place: In the vicinity of 1400 Fairmont St. N.W.

Complainants: Cynthia Padgett, David Padgett, Seldon Stewart, Gregory Padgett, Albert Padgett and Ronnie Isler

(e) And/or any other offenses arising out of the act or transactions set forth in (a) through (d) which could also amount to felonies in the case of an adult

The full investigation referred to above has included waiver proceedings in which Respondent has been represented by counsel. All Court legal and social records on Respondent have been made available to counsel. Respondent and his counsel have been afforded a hearing. A statement in support of this waiver order has been issued by me.

Upon notice that the Respondent has been indicted, this Court will transmit a complete record of the waiver proceedings to the Clerk of the United States District Court for the District of Columbia. The record will include any written materials submitted by counsel, a transcript of the waiver hearing and a copy of my statement in support of this waiver order.

/s/ Morris Miller
Chief Judge

Dated: Jan. 17, 1967.

## APPENDIX II

IN THE JUVENILE COURT
FOR THE DISTRICT OF COLUMBIA

Docket No. 66–4041–J

In the Matter of

WILLIE STRICKLAND, JR.

STATEMENT IN SUPPORT OF
WAIVER ORDER

*Summary of Court Records on Respondent Relevant to Waiver:*

On April 25, 1960, Respondent was charged with robbery (with others, yoking, beating and stealing money). A petition was filed (Docket No. 28–647–J). Respondent acknowledged involvement. The Court social worker reported that Respondent was in unsatisfactory physical condition in that he looked anemic and suffered from primary tuberculosis; that his attendance in school was poor; that the family was poorly provided for—the father drinking up unemployment money; that Willie's neglected condition and adjustment improved while at the Receiving Home. On June 10, 1960, Respondent was committed to the Department of Public Welfare for an indeterminate period with the recommendation that he receive a complete physical examination and treatment for primary tuberculosis.

Respondent made a fairly good adjustment at Maple Glen school. His tuberculosis was also cured. In March 1962, the Respondent was returned to his home with the recommendation that he receive Department of Public Welfare supervision for six months.

On April 29, 1963, Respondent was accused of extorting money from school children and throwing stones at a cadet at Dunbar School. Respondent was warned and released to his father's custody. No complaint was filed.

On June 20, 1962, Respondent was charged with robbery (with another, yoking and stealing money from a newsboy). Petition was filed (Docket No. 37–644–J). On September 10, 1963, Respondent was charged with destroying movable property and petit larceny (cutting convertible top and stealing a purse inside). At the court hearing on October 4, 1963, Respondent denied the yoking and the case was dismissed without a finding. Respondent acknowledged the destruction and larceny charges. Respondent was later recommitted to the Department of Public Welfare for an indeterminate period not to exceed his sixteenth birthday. His commitment expired on April 16, 1965, and he was returned to his parents.

On March 16, 1966, Respondent was charged with housebreaking (with two

others, forcing entry and taking three electric heaters from a pawnbroker shop). Petition was filed (Docket No. 66–1082–J). While Respondent was being questioned about the housebreaking in No. 2 Precinct he absconded. An attachment was ordered for Respondent.

On November 9, 1966, Respondent was charged with assault with a deadly weapon (striking complainant with a bottle). He was also charged with assault with intent to kill and robbery by force and violence (with another, stealing arresting officer's gun at the point of a shotgun). He was also charged with assault with a deadly weapon (six counts, when he fired a shotgun at six complainants, wounding three).

The social worker reports that: Respondent has not been to school since his release from Children's Center; he has been on his own since he absconded from police custody in March 1966; his parents have little control over him; he has had a few odd jobs while on his own; he is the father of a baby girl born on August 27, 1966. The social worker recommended waiver, because the Respondent has conducted himself as an adult since March 1966, and because of the pending complaints. The social worker thought the Respondent to be beyond juvenile rehabilitative facilities. The Director of Social Work concurred in this recommendation.

Waiver procedures were initiated on December 2, 1966.

On December 19, 1966, the chief psychiatrist of Legal Psychiatric Services recommended waiver. He reported that Respondent "does not seem to appreciate the seriousness of the current offenses and tends to make light of the whole thing." The psychiatrist reported that tests on Respondent "point up his tendency toward omnipotent, autistic thinking, and his paranoid attitudes." He concluded that the Respondent "is a very dangerous, impulsive, hostile young man, who sees himself as sort of indestructible superman," and is not psychotic.

*Basis for Waiver:*

Respondent has had full exposure to both the institutional and non-institutional facilities available to the Court. If he did commit the acts with which he is presently charged, it is apparent that his prior exposure to Juvenile Court facilities has not had a significant rehabilitative impact on him. Since he absconded from police custody in March 1966, he has been on his own—away from his parents. His alleged conduct in connection with the waiver charges reflects the highest degree of danger to the public, i. e., assault with intent to kill, assault with a deadly weapon (shotgun) and robbery by force and violence.

Upon consideration of the entire record, I conclude that by the use of facilities currently available to the Juvenile Court: 1) there are not reasonable prospects for rehabilitation of the Respondent; 2) and that public safety can not be adequately protected.

/s/ Morris Miller
Chief Judge

Dated: Jan. 17, 1967.

BAZELON, Chief Judge (dissenting):

The Court today affirms a District Court determination that the Juvenile Court properly waived its jurisdiction. The District Court had before it *only* the naked order of the Juvenile Court waiving jurisdiction without a word of explanation or reason. Our affirmance flatly disregards the teachings of the Supreme Court in Kent v. United States.[1]

Willie Strickland, Jr., the appellant, was charged with assault with a deadly weapon in a complaint filed in November, 1966. He was then 17 years old. By order entered in January, 1967 the Juvenile Court waived its exclusive jurisdiction over the youth.[2] Shortly thereafter appellant was indicted.

At the beginning of the trial in the District Court, defense counsel moved to

---

1. 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed. 2d 84 (1966).

2. *See* D.C.Code §§ 11–1551 to 11–1553 (1967). The order is reproduced as Appendix I to the Majority Opinion.

dismiss the indictment on the ground that the Juvenile Court's waiver was invalid.[3] Counsel pointed out that the Juvenile Court file could not be located, and that the only document before the District Court was a Juvenile Court order waiving jurisdiction. Counsel argued that the order, which merely recited that a waiver hearing had been held, was insufficient to show that the waiver was proper.[4]

It is now settled in this jurisdiction that a waiver proceeding is a "critically important" stage for the juvenile at which procedural safeguards must be scrupulously observed.[5] The reason is plain: "[i]t is implicit in [the Juvenile Court] scheme that non-criminal treatment is to be the rule—and the adult criminal treatment, the exception which must be governed by the particular factors of individual cases."[6] "The divide between the Juvenile Court with its promise of non-punitive treatment and the harsher world of the District Court," we have said, "is one not lightly to be crossed."[7]

The juvenile—and society—is protected against improvident waiver in two ways. First, before a waiver, the juvenile is entitled to a hearing with counsel.[8] Second, after a hearing, the Juvenile Court's action is reviewable in the District Court by a motion to dismiss the indictment.[9] To make this review meaningful, the Supreme Court in *Kent* held that an order, merely reciting the requirements for waiver had been met, was an insufficient record to allow the type of *review* to which appellant had a statutory and constitutional right:

> Meaningful review requires that the reviewing court should review. It should not be remitted to *assumptions*. It must have before it a statement of reasons motivating the waiver including of course, a statement of the relevant facts. It may not *"assume"* that there are adequate reasons, nor may it merely *assume* that "full investigation" has been made.[10]

Today the Court reverts to the prior practice, held invalid in *Kent*,[11] of sub-

---

3. *See* Kent v. Reid, 114 U.S.App.D.C. 330, 316 F.2d 331 (1963).

4. *See* Kent v. United States, *supra* note 1.

5. *See, e. g.,* Kent v. United States, *supra* note 1; Black v. United States, 122 U.S. App.D.C. 393, 355 F.2d 104 (1965); Watkins v. United States, 119 U.S.App. D.C. 409, 343 F.2d 278 (1964).

6. Harling v. United States, 111 U.S.App. D.C. 174, 177–178, 295 F.2d 161, 164–165 (1961), *cited in* Black v. United States, *supra* note 5, 122 U.S.App.D.C. at 394, 355 F.2d at 105.

7. Haziel v. United States, 131 U.S.App. D.C. 298, 301, 404 F.2d 1275, 1278 (1968).

8. *See* cases cited in note 5, *supra.*

9. Kent v. United States, *supra* note 1; Kent v. Reid, *supra* note 3.

10. Kent v. United States, *supra* note 1, 383 U.S. at 561, 86 S.Ct. at 1057 (emphasis added). The Court continued:

> Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons or considerations therefor. * * * [T]he statement should be sufficient to demonstrate that

the statutory requirement of "full investigation" has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review.
> *Id.*

11. This Court's decision in Kent v. United States, 119 U.S.App.D.C. 378, 343 F.2d 247 (1965), reversed by the Supreme Court, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), allowed review based explicitly on assumption and inference:

> We do not, of course, have in this record a specification by the Juvenile Court Judge of precisely why he concluded to waive jurisdiction. But neither may one infer from what is before us that his reasons fell outside the penumbra of Policy Memorandum No. 7.
> *Id.* 119 U.S.App.D.C. at 384, 343 F.2d at 253.
> At the time of his arrest for the crimes involved here, he was a ward of the Court and had been for two years. It is not paltering with reality to infer that the Court knew a great deal about him; and that its decision on waiver

stituting assumptions for the facts necessary to make review meaningful: "We can reasonably *assume* that the trial judge had both these documents [the order and the statement of reasons] in his possession * * *. It is a safe *assumption* that both the waiver order and statement in support thereof were transmitted together * * *." Majority opinion at 1134. Not only are assumptions insufficient to satisfy the due process requirements of *Kent,* but the assumption made by the Court is entirely belied by a careful consideration of the record.

In denying appellant's motion to dismiss the indictment, the District Judge relied only on "a copy of Judge Miller's *order* with respect to waiver,"[12] and summarized what he had before him in language which tracks that of the order, not of the statement of reasons.[13] Appellant's counsel then stated "All we have is the copy of an order saying that there was a waiver proceeding."[14] The Government responded by offering a certified copy of the order and arguing that

"[i]n view of the copy, the Court can take judicial notice of the [Juvenile] Court's order and of the waiver."[15]

On the second day of the trial, after appellant had renewed the motion to dismiss the indictment, the District Judge responded:

> THE COURT: *All* we have is a copy of Judge Miller's statement which you have seen,—
>
> MR. VOLTZ: Yes, sir.
>
> THE COURT:—which recites the hearing was held, defendant was represented, when on the basis of the hearing and consideration of the record over there, he waived the case.[16]

His language again tracks that of the order and not the statement. It is beyond belief in view of the explicit requirements of *Kent* that no one at the trial would have mentioned the statement of reasons explicitly if it was, in fact, available.[17]

Since the record indicates that the District Judge denied the motion to dismiss

---

was informed by prior experience with, and observation of, appellant himself. *Id.* 119 U.S.App.D.C. at 386, 343 F.2d at 255.

12. Transcript p. 5.

13. [T]he Court has brought it to the attention of defense counsel, a copy of Judge Miller's order with respect to waiver which is dated January 17, 1967, and reflects that a full investigation referred to [sic] and has included a waiver proceeding in which a respondent has been represented by counsel. The records of the respondent have been made available to counsel, respondent and his counsel have been afforded a hearing, and a statement in support of waiver has been issued by me, and it further states upon notice that the respondent has been indicted, and this Court will transmit a complete record of the waiver proceedings to the Clerk of the United States District Court for the District of Columbia. The record will include any written materials submitted by counsel, and a transcript of the waiver hearing and a copy of any statement in support of this waiver order.
Transcript, pp. 5–6, Compare the actual order, reproduced as appendix I to the Majority opinion.

14. Transcript, pp. 6–7.

15. *Id.* at 8.

16. *Id.* at 125 (emphasis added). The majority relies on the use of the word "statement" in the first sentence of this exchange to suggest that the District Court did in fact have a copy of the statement of reasons. Majority opinion at note 1. Viewed in its entirety, the exchange negates any such reliance. In the same note, the Majority also erroneously asserts that there is no mention of the Statement in Support of Waiver by the District Judge. In the passage quoted in note 14, *supra,* the District Judge indicates that the statement *was to accompany appellant's Juvenile Court Records* which, the Court also states, had not been found.

17. The transcript contains a fleeting reference indicating that the "missing record" had been found by the Juvenile Court and would be shown to defense counsel. The Court's reliance on this point is misplaced. The papers before us provide no assurance that the "missing record" was actually located and shown to the trial judge and defense counsel. This is hardly idle speculation, for the "missing record" could not be found in the District Court files, or the Juvenile Court files, or the trial judge's chambers when this Court requested it.

on the basis of the order, without access to the statement of reasons, the case is virtually indistinguishable from *Kent*.

The failure of the District Judge to have before him a statement of reasons is not, however, the only infirmity affecting the proceedings below. As the Government conceded at oral argument, the transcript of the waiver hearing was never produced for either the judge or defense counsel. Indeed the waiver hearing transcript has not been found, even to this date, despite persistent efforts to locate it.[18] The lack of a transcript may well have kept appellant from showing, for example, that the statement of reasons was not supported by the record,[19] or that matters not referred to rendered the waiver improper.[20] In my view, the "meaningful review" mandated by *Kent*

requires that the waiver transcript be available so that defense counsel has a fair opportunity to challenge the reasons for waiver.[21] Otherwise, the requirements of a hearing and a statement of reasons would be a cruel gesture.[22]

In this case, the District Court review of the waiver decision was based on an order with a naked, boilerplate recitation that the requirements for waiver had been met. Even if a statement of reasons had been available, defense counsel lacked the transcript necessary to make review more than sham. I would remand the case for a determination of the validity of the waiver.[23] Only if the supplemental record failed to supply the critical missing links required by the Supreme Court in Kent, would it be necessary to vacate appellant's conviction.

18. The Clerk's office of this court searched its own files for the missing transcript. It also requested the District Court Clerk to search its criminal division files, both open and closed, in the instant case and two others in which appellant was a defendant. Our Clerk's office also contacted the parties' attorneys, neither of whom could offer any leads. Finally, the Juvenile Court was contacted, and relevant open and closed files were searched there without success.

One extremely troubling point was uncovered by the search. The Supervisor of Court Reporters at the Juvenile Court was contacted. She had worked for Chief Judge Miller during the time the waiver hearing should have been held. She checked the court reporters' collective and individual files for notes of the waiver hearing but could find none. Also, she reported that the court reporters maintain a file of extra copies of their transcripts, filed alphabetically. The hearing before Judge Miller could not be found in this file. These facts, if they are true, raise the disturbing possibilities that the hearing was never held or, if held, never transcribed.

19. *Cf.* Kent v. United States, 130 U.S.App. D.C. 343, 345, 401 F.2d 408, 410 (1968).

20. *Cf. id.* at 346–347, 401 F.2d at 411–412; Haziel v. United States, *supra* note 7, 131 U.S.App.D.C. at 303, 404 F.2d at 1280.

21. The transcript may provide information which is useful in other ways as well.

We pointed out in Black v. United States, *supra* note 5, 119 U.S.App.D.C. at 396, 355 F.2d at 107 that

properly conducted waiver proceedings * * * may disclose information, hitherto unknown to the District Court, which could alter (1) its determination whether to proceed as a Juvenile Court; (2) its choice among sentencing alternatives; (3) its or appellant's decision regarding appropriateness of raising the insanity defense. (footnotes omitted)

22. While the Court cites United States v. DiCanio, 2 Cir., 245 F.2d 713, cert. denied, 355 U.S. 874, 78 S.Ct. 126, 2 L.Ed. 2d 79 (1957), for the proposition that "the absence of a completely accurate transcript does not, without more, invalidate a conviction," Majority opinion at 1133, in that case all that was omitted from the transcript was "mere colloquy, the sort of bickering between counsel that is often omitted entirely by experienced court reporters." *Id.* at 715. Where, as here, the *entire* transcript is lost, the cases are clear that the appropriate course is a remand to the district court for a new trial. *See, e. g.,* United States v. Rosa, 434 F.2d 964 (5th Cir. 1970); Herring v. Kennedy-Herring Hardware Co., 261 F.2d 202 (6th Cir. 1958); *cf.* Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1963).

23. See Haziel v. United States, *supra* note 7.