**Bobby Carl INGE**

**v.**

**A. E. SLAYTON, Jr., Sup't., etc.**

**Civ. A. No. 73-494-R.**

United States District Court,
E. D. Virginia,
Richmond Division.

June 4, 1975.

Daniel A. Carrell, Joseph C. Carter, Jr., Richmond, Va., for plaintiff.

Robert E. Shepherd, Jr., Asst. Atty. Gen. of Virginia, Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Bobby Carl Inge, a Virginia prisoner currently on parole, brings this petition for a writ of habeas corpus in which he challenges his 1962 and 1965 convictions in the Corporation Court for the City of Newport News, Virginia—now the Circuit Court for the City of Newport News—on the grounds that in both instances he was denied due process of law. More specifically, petitioner contends that he was a juvenile at the time he was charged with each of the offenses for which he was convicted and that the juvenile court proceedings prior to his certification to Corporation Court for treatment as an adult offender were defective. He further alleges that the Corporation Court proceedings themselves rectified only certain irregularities which occurred at the juvenile court level and that the Corporation Court denied him due process of law by failing to divulge its reasons for retaining the criminal actions against him. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 2254.

While the facts in this matter are complicated by the absence of complete state court records—some of which were destroyed pursuant to state law—there is sufficient evidence before it for the Court to decide the issues raised. The record does indicate that on September 24, 1962, petitioner, than age 16, appeared before the Juvenile Court for the City of Newport News on a series of charges, two of which—burglary and grand larceny—were certified by the court to the grand jury. Subsequently, petitioner pled guilty to and was convicted of statutory burglary on October 29, 1962 in the Corporation Court for the City of Newport News and was sentenced to serve two years in the Virginia State Penitentiary.

Again in 1964, petitioner, then age 18, appeared before the Juvenile Court for the City of Newport News charged with several offenses, four of which were again certified to the grand jury. Thereafter on May 4, 1965, petitioner pled guilty to and was convicted of statutory burglary and was sentenced to serve five years in the penitentiary.

After having completely served his sentences for the 1962 and 1965 convictions, on May 19, 1971, petitioner was convicted of hit-and-run in the Hustings Court for the City of Newport News—now also the Circuit Court—and was sentenced to serve four years in the penitentiary. Thereafter, on November 24, 1971, recidivist proceedings were instituted against petitioner in the Circuit Court for the City of Richmond, based in part upon the 1962 and 1965 convictions in Newport News. Petitioner was convicted on this charge and an addi-

tional three-year sentence was imposed upon him.

On December 6, 1971, petitioner filed a *pro se* petition for a writ of habeas corpus in the Corporation Court for the City of Newport News in which he stated that the grounds which made his detention unlawful were:

DENIAL OF DUE PROCESS OF LAW, IN THAT:

1. Petitioner was denied a juvenile hearing to determine his ability to stand trial as an adult; and

2. Petitioner was denied counsel for a juvenile hearing.

Subsequently, counsel was appointed to represent petitioner and on November 13, 1972 an evidentiary hearing was held. At that time petitioner, by counsel, introduced into evidence the records of the Juvenile and Domestic Relations Court of matters pertaining to the petitioner in the years 1962 and 1964. Petitioner also testified that he did not recall being represented by counsel at his September 24, 1962, hearing before the Juvenile and Domestic Relations Court. He further stated that while he was represented by counsel at the time of his appearance before the Juvenile Court in 1964, no evidence was taken at that time as to whether he should be tried as a juvenile or an adult.

Upon cross-examination, petitioner testified that he was represented by counsel and pled guilty to the charges against him at his October 29, 1962 trial in Corporation Court. He also stated that he had appeared before the Juvenile Court on at least five occasions prior to the filing of charges against him in 1962 and that on at least two of those occasions he had been treated as an adult offender. Petitioner further stated that his parents had posted his bond prior to the 1962 Juvenile Court hearing. With regard to the 1964 charges, petitioner testified that he was represented by counsel in both the Juvenile and Corporation Court proceedings.

Evidence adduced on behalf of the Commonwealth of Virginia at the petitioner's hearing came from his former counsel and the Chief of Probation and Detention of the Newport News Juvenile Court. His former counsel testified that while some of his old records had been destroyed, he recalled representing the petitioner before the Juvenile and Corporation Courts with regard to the charges filed against the petitioner in September of 1964. He also noted that although he had no specific recollection as to the matters raised during the 1964 Juvenile Court proceeding, he could state that he recalled the Juvenile Court Judge invariably passed on whether a juvenile should be tried as an adult prior to certifying cases.

The probation officer then testified that he had been the probation officer assigned to petitioner in both 1962 and 1964. He stated that prior to his 1962 appearance before the Juvenile Court, petitioner has appeared on several occasions and, apparently based upon the disposition of the previous charges, had been treated as an adult offender. He additionally stated that the Juvenile Court Judge always held hearings on whether to treat a juvenile as an adult offender but that the Juvenile Court Judge never treated a juvenile as such if the juvenile had a previous record in the court of being treated as an adult offender. He indicated that the Juvenile Court Judge who presided over petitioner's proceedings was still sitting in that capacity and that while he had prepared and orally presented in court an investigative report for the 1962 and 1964 juvenile proceedings, he no longer had a copy of them.

On November 20, 1972, the Corporation Court dismissed the petition and a petition for a writ of error was denied by the Supreme Court of Virginia by order of June 26, 1973. Thereafter, on September 27, 1973, the petition *sub judice* was filed in which petitioner alleges three basically independent grounds for

voiding his 1962 and 1965 convictions. They are:

1. That his conviction in the Corporation Court for the City of Newport News of October 29, 1962, was void by reason of his not having the assistance of counsel in the Juvenile Court for the City of Newport News when that court waived jurisdiction over petitioner and ordered the case certified to the Corporation Court;

2. That his conviction of October 29, 1962 was also void by reason of the fact that there is no record of notice to his parents or of his parents' presence at that proceeding;

3. That his convictions in Corporation Court on October 29, 1962 and May 4, 1965, are void because when each of those cases was certified to the court of record by the waiver of jurisdiction by the Juvenile Court, the Juvenile Court did not state the reasons for such waiver nor does petitioner recall any actual hearing being held to determine whether the Juvenile Court should retain jurisdiction over him or whether he should be certified to the Corporation Court for trial as an adult.

■ The threshold question raised by the respondent concerns petitioner's alleged failure to exhaust his available State remedies with regard to the issue of notice to or the presence of his parents at the 1962 Juvenile Court proceedings. Respondent contends that this issue was not raised by petitioner in his State habeas corpus petition and that, although it was noted in his petition for a writ of error to the Virginia Supreme Court, it was not actually ruled upon by that Court.

Petitioner alleges, however, that this issue was implicit in his State petition on due process grounds. In the alternative, petitioner argues that he no longer has any State court remedies available to him by virtue of the Virginia Supreme Court's recent ruling in Smith v. Superintendent of Virginia State Penitentiary, 214 Va. 359, 200 S.E.2d 523 (1973). There, with facts very similar to those present in the instant petition, Smith, in a habeas corpus proceeding, attacked a recidivist sentence on the ground that it was based in part upon a conviction against him in 1945. Smith further alleged that the 1945 conviction was void because he was denied proper juvenile court procedures in that he had not been properly certified for trial as an adult and had not been tried with the assistance of an attorney or guardian. In ruling that Smith lacked standing to challenge his 1945 conviction, the Virginia Supreme Court held:

> The question thus presented for decision is whether a prisoner detained under a recidivism sentence has standing to attack by habeas corpus the validity of one of the convictions underlying the determination of his status as a recidivist when the sentence imposed for the challenged conviction has been fully served. We answer in the negative. We hold that such an attack must be made in the recidivism proceeding itself, else any objection to a prior conviction, the sentence for which has been fully served, shall be deemed forever waived. 200 S.E.2d at 524.

Consequently, and despite respondent's contention that petitioner may still attack his recidivist proceeding on the ground that counsel was ineffective in failing to assert an attack on the 1962 and 1965 convictions, the Court finds that the petitioner has no right under Virginia law to raise, by any available procedure, the questions presented in the instant petition. Accordingly, the Court concludes that petitioner has met the exhaustion requirement contained in 28 U.S.C. § 2254(c).

Turning then to the substantive issues raised in this matter, the Court notes initially that during the period of 1962 through 1964, Virginia law set forth the procedures which were required prior to a juvenile court's waiver of its jurisdiction over a youthful offender. Section

16.1–176 of the Code of Virginia (1950) then in effect provided in relevant part:

(a) If a child fourteen years of age or over is charged with an offense which, if committed by an adult, could be punishable by confinement in the penitentiary the court after an investigation as prescribed in paragraph (b) of this section, and hearing thereon may, in its discretion, retain jurisdiction or certify such child for proper criminal proceedings to the appropriate court of record having criminal jurisdiction of such offenses committed by an adult . . .

(b) In all cases under this section the court may, unless such information is otherwise available to it from prior investigation and report to another court, require an investigation of the physical, mental and social condition and personality of the child or minor and the facts and circumstances surrounding the violation of the law which is the cause of his being before the court. . . . [i]f an investigation and report has been made by the juvenile court and the results thereof certified to a court of record, the latter need not order such investigation.

The Court further notes that Section 16.1–175 of the Code of Virginia (1950) provided at that time that:

If during the pendency of a criminal or quasi-criminal proceeding against any person in any other court other than a juvenile court it shall be ascertained that the person was under the age of eighteen years at the time of committing the alleged offense, such court shall forthwith transfer the case together with all papers, documents and evidence connected therewith, to the juvenile court of the city or county having jurisdiction, provided if such is pending in a court of record, the judge thereof, in his discretion may upon completion of an investigative report as described in Section 16.-1–176(b), may continue with the trial thereof.

Moreover, with regard to the issue of notice to a juvenile offender's parents, Section 16.1–172 of the Code provided during that period of time that:

In no case shall the [Juvenile] hearing proceed until the parent or parents of the child . . . have been notified, unless the judge shall certify on his record that diligent efforts have been made to locate and notify the parent or parents without avail, or unless the court shall certify that no useful purpose would be served thereby because of the conditions set out in § 16.1–166 [relating to summons and to taking the child into custody].

Finally, the Court notes that Section 16.1–173 of the Code of Virginia (1950), then in effect, set forth the procedures to be followed by the Juvenile Court in the absence of the juvenile's parents. It provided:

When no person required to be notified under § 16.1–172 is present in court at the time of the hearing, the court shall, before proceeding with the hearing, appoint . . . [an] attorney at law as guardian ad litem to represent the interests of the child . . . and such guardian ad litem shall be present at the hearing.

In arguing the merits of his petition, the petitioner quite properly places heavy reliance upon Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), wherein the Supreme Court held, with reference to an action arising under the District of Columbia Juvenile Court Act, that "the waiver of jurisdiction [by a Juvenile Court] is a 'critically important' action determining vitally important statutory rights of the juvenile." *Id.* at 556, 86 S.Ct. at 1055. Finding that the petitioner there was by statute entitled to certain procedures and benefits as a consequence of his statutory right to the "exclusive" jurisdiction of the Juvenile Court, the Court went on to conclude:

[A]s a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to

the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel. *Id.* at 557, 86 S.Ct. at 1055.

It is the petitioner's position that in view of the Virginia law then applicable, as well as on the basis of *Kent* and the retroactive application of its principles enunciated by this Circuit in Kemplen v. Maryland, 428 F.2d 169 (4th Cir. 1970), the record fails to establish that he was accorded his right to counsel at his 1962 appearance before the Juvenile Court, that notice was given to his parents concerning either the 1962 or 1964 Juvenile Court hearings, or that he was accorded a hearing either in Juvenile or Corporation Court in 1962 or 1965 with regard to the specific issue of waiver of Juvenile Court jurisdiction. The petitioner further contends that while certain irregularities were rectified by virtue of petitioner's representation by counsel in Corporation Court in 1962 and 1965, as well as the preparation of a pre-trial investigative report in each case, there remains no evidence to indicate that a hearing on the waiver issue was conducted or that reasons were offered as to why petitioner was tried as an adult.

The respondent alleges, however, that in both convictions attacked by the petitioner, he was represented by counsel in the Corporation Court and pled guilty to the charges against him. Respondent argues, therefore, focusing primarily upon Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), that the entry of voluntary and intelligent pleas of guilty in the 1962 and 1965 convictions amount to a waiver of any arguable defects in the certification or waiver proceedings. The Court is not persuaded that such is the case.

While it is true, as respondent suggests, that the Supreme Court announced in *Tollett* that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea," 411 U.S. at 267, 93 S.Ct. at 1608, the Court has more recently carved out an exception to this far-reaching principle when a claim is presented attacking the jurisdiction of the court in which the petitioner was tried. See Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

In *Blackledge,* which the Court finds more closely analogous to the instant matter than *Tollett,* the petitioner was a North Carolina prisoner who had been charged with a misdemeanor arising out of an altercation in the state penitentiary. Under North Carolina law, the District Court of the General Court of Justice had exclusive jurisdiction for the trial of misdemeanors. Following his trial and conviction in the District Court, Perry exercised his right to a trial *de novo* in the Superior Court. After the filing of his notice of appeal, but prior to his appearance for trial *de novo,* the prosecutor obtained an indictment charging Perry with a felony for the same conduct for which he had been tried and convicted in the District Court. Thereafter, Perry entered a plea of guilty to the indictment in Superior Court.

In his federal habeas petition, Perry alleged that the indictment on the felony charge constituted double jeopardy and deprived him of due process of law. The United States District Court for the Eastern District of North Carolina dismissed the petition for failure to exhaust, but the Fourth Circuit Court of Appeals reversed and remanded finding that resort to the state courts of North Carolina would be futile in light of their prior rejection of such claims. On remand, the District Court granted the writ and the Fourth Circuit affirmed.

On appeal, the Supreme Court focused initially upon the petitioner's claim that the indictment on the felony charge constituted a penalty for his exercising his statutory right to appeal and thus contravened the Due Process Clause of the Fourteenth Amendment. Finding in favor of the petitioner, the Court then turned to the question of whether his counseled plea of guilty to the felony charge precluded him from raising his constitutional claims in a federal habeas corpus proceeding.

The Court first reviewed its prior decisions, including Tollett v. Henderson, *supra*, 411 U.S. 258, 94 S.Ct. 2098, 40 L. Ed.2d 628 (1973) and the so-called *"Brady* trilogy."[1] The Court noted that in none of those cases did the underlying claim presented go to the very power of the State to bring the defendant into court to answer the charge brought against him. The Court went on to suggest that unlike *Tollett,* where the petitioner attacked the constitutionality of the grand jury by which he had been indicted, the petitioner in the matter before it was not complaining of antecedent constitutional violations. The Court then stated:

> Rather, the right that he asserts and that we today accept is the right not to be haled into court at all upon the felony charge. The very initiation of the proceedings against him in the Superior Court thus operated to deny him due process of law. 417 U.S. at 30–31, 94 S.Ct. at 2104.

Thereafter, although analogizing to but not relying upon principles enunciated earlier in Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), concerning the Double Jeopardy Clause, the Court concluded:

> The "practical result" dictated by the Due Process Clause in this case is that North Carolina simply could not permissibly require Perry to answer to the felony charge. That being so, it follows that his guilty plea did not

foreclose him from attacking his conviction in the Superior Court proceedings through a federal writ of habeas corpus. 417 U.S. at 31, 94 S.Ct. at 2104.

In the instant matter, there can be no doubt that the petitioner is effectively asserting his rights as a juvenile in 1962 and 1965, both under state law and constitutional principles, not to have been tried in a court other than a juvenile court in the absence of certain procedural safeguards concerning the juvenile court's waiver of its jurisdiction over him. Consequently, and on the basis of Blackledge v. Perry, *supra*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Court finds that petitioner's guilty plea in Corporation Court for the City of Newport News does not bar him from now asserting those rights in this federal habeas corpus proceeding.

■    While it is true, as the respondent further argues, that the defects in the juvenile court proceedings could have been rectified, pursuant to Section 16.1–175 of the Code of Virginia (1950), by an investigative report and waiver determination in the Corporation Court for the City of Newport News, the record fails to disclose that such was accomplished. Moreover, the Court does not find conclusive the testimony of the probation officer in the state evidentiary hearing that even had a waiver hearing been held, the same result would have occurred since it was the Juvenile Court Judge's policy to waive jurisdiction if a juvenile, such as the petitioner, had previously been treated as an adult.

■■    In conclusion, the Court finds that the clear mandate of Kent v. United States, *supra*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), is that the petitioner was entitled to the assistance of counsel at his 1962 appearance before the Juvenile Court, as well as a hearing upon and a statement of reasons for the Juvenile Court's certification of him to Corporation Court in both 1962 and

---

1. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ; McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) ; and Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L. Ed.2d 785 (1970).

1965. Since the record fails to disclose that the petitioner was in fact accorded such rights, he is now entitled to relief.

Accordingly, the Court, before ruling on the petition for a writ of habeas corpus, must determine if the certifications under attack were appropriate. While the Court is inclined to follow the procedures outlined in Kent v. United States, *supra,* and Kemplen v. Maryland, *supra,* 428 F.2d 169 (4th Cir. 1970), whereby the state is permitted a reasonable time within which to provide the petitioner a *de novo* determination as to the propriety of his certification, the Court has previously noted in a similar matter that the Commonwealth of Virginia then had no procedure pursuant to which such a determination may now be made. See James v. Cox, No. 5999–R, Mem. decis. Oct. 16, 1972. If such a procedure is now available, the Court will withhold any further action for a period of sixty (60) days in order to permit the Commonwealth of Virginia to utilize any such available procedure. Absent advice from counsel to the effect that such a procedure is available, the matter will be set down for hearing with reference to the juvenile certifications.