**Bobby Carl INGE, Petitioner,**

v.

**A. E. SLAYTON, Jr., Superintendent, Respondent.**

Civ. A. No. 73–494–R.

United States District Court,
E. D. Virginia,
Richmond Division.

May 17, 1978.

Daniel A. Carrell, Joseph C. Carter, Jr., Richmond, Va., for petitioner.

Asst. Atty. Gen. of Virginia Wilburn C. Dibling, Richmond, Va., for respondent.

## MEMORANDUM

MERHIGE, District Judge.

The instant cause is one in which Bobby Carl Inge, a Virginia prisoner presently on parole seeks a writ of habeas corpus. Jurisdiction of the Court is attained pursuant to 28 U.S.C. §§ 2254, 2241(a).

By order of June 4, 1975, this Court found constitutional defects in the state Juvenile Court proceedings which preceded petitioner's trials as an adult on criminal charges in the Corporation Court of the City of Newport News in 1962 and 1965. *See Inge v. Slayton*, 395 F.Supp. 560 (D.C. Va.1975). Specifically, the Court held that petitioner, then a juvenile, was denied his right to counsel at his 1962 appearance in the Juvenile and Domestic Relations Court, and was not accorded a hearing upon, nor a statement of reasons for, that Court's certification of him to the Corporation Court for trial as an adult in 1962 and 1964.[1] Before ruling upon the petition for writ of habeas corpus,[2] this Court granted the Commonwealth of Virginia sixty days in which to utilize any available procedure to make a *de novo* determination as to the propriety of the 1962 and 1964 certifications in accordance with *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and *Kemplen v. Maryland*, 428 F.2d 169 (4th Cir. 1970).

The Commonwealth appealed that order to the United States Court of Appeals for the Fourth Circuit. Petitioner filed a motion to dismiss on the ground that the order being appealed was not final, and by a decision of September 3, 1976, the Court of Appeals for the Fourth Circuit dismissed the appeal.

The Commonwealth has informed the Court that it has no procedure to make a *de novo* determination as to the propriety of petitioner's certification for trial as an adult. Accordingly, it devolves upon this Court to make such a determination. *See Kemplen v. Maryland, supra.*

Counsel having agreed that there is no new evidence to be introduced at the *de novo* certification hearing, the matter is now ripe for disposition on the record.

## I.

The threshold inquiry is what standard should be applied in deciding whether petitioner should have been certified for trial as an adult on the 1962 and 1964 criminal charges. Respondent asserts that this Court must attempt to determine whether Judge Wall of the Juvenile Court

---

1. The Court is aware of recent decisions holding that *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) cannot be applied retroactively. *E. g., State v. Leuder*, 21 Cr.L. 2410 (July 22, 1977); *Brown v. Wainwright*, 537 F.2d 154 (5th Cir. 1976). This Court however is bound by the opinion of the United States Court of Appeals for the Fourth Circuit in *Kemplen v. Maryland*, 428 F.2d 169 (4th Cir. 1970) to the effect that *Kent* is of constitutional dimension and is to be given retroactive effect.

2. Petitioner has completely served his sentences for the convictions which resulted from the juvenile court's waiver of jurisdiction in these cases. However, in 1971, petitioner was convicted of hit and run and sentenced to serve four years in the penitentiary. Recidivist proceedings were then instituted against petitioner in the Circuit Court for the City of Richmond, based in part upon the 1962 and 1965 convictions in Newport News, Va. Petitioner was convicted on this charge, and an additional ten year sentence was imposed. It is from this sentence that petitioner is now on parole. After exhausting his state remedies petitioner sought a writ of habeas corpus in this Court on the ground that the recidivist proceedings were invalid to the extent that they relied upon the 1962 and 1964 convictions.

would have ordered transfer of the petitioner's case by comparing the facts of the petitioner's situation with others in which Judge Wall ordered transfer. Specifically, respondent contends that Judge Wall "universally refused to treat a juvenile defendant as a juvenile after the Court had once treated the child as an adult," and urges this Court to determine that Judge Wall would have bound Bobby Carl Inge over for adult trial on these charges on the ground that Inge had on previous occasions been tried as an adult.

This Court declines arbitrarily to follow what is described as Judge Wall's "universal" practice. First, there is no evidence that the initial decision to try petitioner as an adult was made in accordance with constitutional standards. If that determination were constitutionally defective, respondent's bootstrap argument necessarily would fail. Second, such a "universal" practice would render hollow petitioner's right to a hearing on the question of certification, as evidence adduced at the hearing would not be considered by the Court in deciding whether petitioner should be tried as an adult. Third, and most important, this Court cannot and, fortunately, need not attempt to reconstruct the personal beliefs and habits of a particular member of the judiciary. The concept of justice is larger than the individual men and women who sit temporarily as its ministers. Rather, this Court need only determine whether, on the basis of all information which might reasonably have been proffered at certification hearings in 1962 and 1964, a reasonable Juvenile Court would have waived its jurisdiction and ordered petitioner tried as an adult.[3]

## II.

The record reflects that on September 13, 1962, respondent, a white male then sixteen years of age, was arrested in the City of Newport News on multiple charges of burglary, larceny, grand larceny and destroying property. These charges grew out of three separate incidents. In the first, it was alleged that petitioner stole women's undergarments from a clothesline. In the second, petitioner allegedly poured paint on a car. In the third incident, petitioner was charged, along with two other youths, with breaking at night into a local market and stealing approximately $450.00 in cash. The Juvenile Court handled charges growing out of the first two incidents as juvenile offenses; but certified petitioner for trial as an adult on the burglary and grand larceny charges which stemmed from the last incident.

At the time petitioner appeared before the Juvenile Court, he had been arrested on at least seven previous occasions, and been tried, convicted as an adult and sentenced to jail on at least three charges, including assault and battery and grand larceny. His first conflict with the law had come at the age of 12. Petitioner had dropped out of school before completing the 7th grade, having failed the 3rd, 6th and 7th grades. He was living with his parents and was unemployed, having made no substantial effort to contribute to his support. Petitioner's father worked as a maintenance man at Fort Eustis, Virginia, as he had for the preceding fifteen years. Neither parent had any criminal record.

Petitioner had undergone major surgery when he was twelve years of age. A tumor on his jaw was removed, leaving a large deformity and obvious scar on his face and neck.

In connection with criminal charges pending against him in 1961, petitioner had been committed to Eastern State Hospital for psychiatric evaluation. Dr. Wyatt, the examining physician, wrote as follows:

---

**3.** *Kemplen v. State of Maryland*, 428 F.2d 169 (4th Cir. 1970) is not to the contrary. In *Kemplen*, the Court stated that the district court must determine "*nunc pro tunc . . .* what the juvenile court judge would probably have done in light of all of the information then available that might reasonably have been proffered by competent counsel." *Id.* at 178. The literal interpretation of this passage urged by counsel for respondent seems to this Court unintended by the appellate court. Compare *Brown v. Cox*, 481 F.2d 622, 627 (4th Cir. 1973); *James v. Slayton*, No. 72–2384 at 2383 (4th Cir. Aug. 27, 1973).

Since his [surgery], he has become quite concerned about himself, feels that he may not live too long and has developed considerable self pity. He began to act out many of his feelings, particularly aggressive and hostile ones, being disobedient to his family, uncooperative in school to the point that he was dismissed from school. . . . He stedfastly insists that he does not want help from anyone, that he will not cooperate with the court whatever they ask of him, and likewise he will not take orders from anyone here. . . . A psychological examination of this child indicates somewhat borderline intelligence level with an I.Q. being 77. . . . His inadequate personality development prevents him from establishing satisfying interpersonal relationships so that he has developed into a social isolate who is quite aware of his estrangement from others and tends to react accordingly with aggression and denial.

Dr. Wyatt concluded that petitioner was not mentally ill, diagnosing his condition as "adjustment reaction of adolescence most likely related to this child's surgical disfigurement."

Petitioner was tried as an adult on the certified charges, and convicted of statutory burglary. He was sentenced to a term in jail, and was incarcerated for seventeen months, mostly at the Southampton Farm.

In 1964, less than four months after his release from the Southampton Farm, petitioner, then seventeen years of age, was arrested on multiple counts of burglary, grand larceny, attempted grand larceny and felonious assault. These charges resulted from one incident in which it was alleged that petitioner and another boy broke into a restaurant at night, and when confronted by police, petitioner pointed his gun at the arresting officer and the owner.

In the four months following his release from Southampton Farm, petitioner had also been convicted of disorderly conduct. The record reflects that he had not been employed. A test taken at about that time measured his I.Q. as 91.

The Juvenile Court waived its jurisdiction and bound petitioner over for trial as an adult on the pending charges. Petitioner was convicted of statutory burglary.

### III.

■■ A strong presumption of the Juvenile Code is that young offenders should be rehabilitated, not punished.[4] Thus noncriminal disposition of cases is the general rule. Certification for trial as an adult should be made only after all rehabilitative possibilities have been canvassed, and the Juvenile Court has determined that the child is not amenable to rehabilitation.[5] *See Brown v. Cox*, 481 F.2d 622, 631–32 (4th Cir. 1973); *Haziel v. United States*, 131 U.S.App.D.C. 298, 302, 404 F.2d 1275, 1979 (1968). The factors to be considered include the offender's past record,[6] mental health, motivation, and prior opportunities for self-help and the nature of the offenses with which he is charged.

---

**4.** Section 16.1–177.1, Code of Virginia (1950) states:

(1) Purpose and Intent. This law shall be construed liberally and is remedial in character. . . . It is the intention of this law that in all proceedings concerning the disposition . . . of children coming within the provision hereof, the Court shall proceed upon the theory that the welfare of the child is the paramount concern of the state . . .

**5.** The statutory presumption of amenability to treatment is reversed only if the juvenile has attained the age of 16 and has previously been committed to a training school. Section 16.1–176.1 Code of Va. (1960). Since petitioner had never been so committed, he is entitled to the normal presumption of amenability to rehabilitation.

**6.** "[T]he relevance [of the juvenile's past record] lies not in the justification it may provide for the Juvenile Court to abandon its statutory duty to help the young offender, but in the insight it may contribute to the best strategy for rehabilitation." *Haziel v. United States*, 131 U.S.App.D.C. 298, 305, 404 F.2d 1275, 1282 (1968). *See generally*, Note, *Rights and Rehabilitation in the Juvenile Courts*, 67 Col.L.Rev. 281, 310–20 (1967); Cohen, *Standard of Proof in Juvenile Proceedings*, 68 Mich.L.Rev. 567, 580–85 (1970).

■ On the basis of all available evidence which might have been proffered by competent counsel on petitioner's behalf in the certification hearing in 1962, the Court concludes that a reasonable Juvenile Court could have certified petitioner for adult trial. Petitioner, then sixteen years of age, was charged with a serious felony and had failed to profit from earlier leniency by the state courts. He had made no effort to support himself by legal means, and had shown no respect for the property rights of others.

The Court notes that it does not believe that a contrary decision, to retain juvenile jurisdiction, would have been unreasonable. Petitioner at the time was still a youth and had been given no opportunity for vocational training or psychological counsel. The crimes of which he was charged, while serious, had not endangered human life.

Thus, the Court concludes that a decision either to waive or retain juvenile jurisdiction on the 1962 charges would have been appropriately within the Juvenile Court's range of discretion. However, where, as in the instant case, the factors in favor of waiver are sufficient to support the state court's decision, this Court, on habeas corpus review will not disturb that conclusion. Accordingly, petitioner's 1962 conviction will stand.

■ The Court has less difficulty with the certification question as it relates to petitioner's 1964 charges. Perhaps if petitioner had been treated as a juvenile on the 1962 charges, he would have responded well to counseling and training, and the incidents in 1964 might never have occurred. The Court however cannot speculate as to such factors. Petitioner appeared before the Juvenile Judge in 1964 on serious felony charges. He was then seventeen years of age, had been released from state custody less than four months, and had made no effort to support himself by legal means. The Court is satisfied that no reasonable Juvenile Court would have denied transfer of the 1964 charges to the Corporation Court. Hence, petitioner's 1965 conviction will stand.

An appropriate order will issue.